UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:21-CR-48-HAB |
| STERLING BASTIN | ) |
| Defendant. | ) |

## OPINION AND ORDER

Defendant Sterling Bastin (Bastin) is charged in a federal Indictment with three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Before the Court is Bastin's Motion to Dismiss, or in the alternative, to Suppress Evidence (ECF No. 22). In that motion, Bastin challenges the stop of his vehicle on May 24, 2021, contending that the stop lacked probable cause and the warrantless vehicle search stemming from the stop violated the Fourth Amendment. He seeks suppression of all the evidence found inside the vehicle. The Court conducted an evidentiary hearing and received briefing from the parties (ECF Nos. 26, 28, 30, 31). Because the Court finds that both the stop and the search complied with the Fourth Amendment, the Motion to Dismiss, or in the alternative, to Suppress will be DENIED.

### FACTUAL BACKGROUND

These facts are excerpted from the transcript of the evidentiary hearing held on January 7, 2022. (Tr. at ___, ECF No. 29). Officer Justin James (Officer James) is an 8-year veteran patrolman and K-9 handler with the Auburn Police Department. (Tr. at 5). As part of his duties, he is in charge of drug interdiction, a task force which is focused on conducting proactive patrols aimed at

stopping the flow of narcotics through Auburn. (*Id.* at 9). Officer James works with a fully certified K-9 German Shepherd named Reggie.

On May 24, 2021, Officer James, along with Butler Police Officer Rowe[1] and Reggie, were working drug interdiction in Auburn. Officer James was driving a semi-marked 2020 Ford Explorer equipped with in-car video. At approximately 4:30 p.m., Officer James received information that Bastin would be driving northbound on I-69 from the Fort Wayne area in an early 2000 model GM pickup. (Tr. at 10). Officer James was familiar with Bastin's appearance and the vehicle he drives from an investigation in early February 2021.[2] (*Id.* at 11). Although it is not clear from his testimony how he learned of it, a reasonable inference from Officer James' testimony is that he knew from the prior investigation that Bastin had an active warrant in LaGrange County. This was confirmed by information Officer James obtained through his in-car computer. Additionally, Officer James learned that Bastin had a lifetime suspension from operating a motor vehicle. Armed with this information, a photo of Bastin displayed on his computer and a picture of the truck Bastin was supposed to be driving, Officer James moved to a turnaround at I-69 mile marker 329 to watch northbound traffic and await Bastin.

He did not have to wait long. Another officer heading southbound on I-69 observed a vehicle matching Bastin's heading northbound and radioed ahead to Officer James. Shortly after, Officer James, from his stationary location in the median, observed the vehicle with a male driver similar in appearance to Bastin. Officer James then pulled out of the median while Officer Rowe verified the license plate information. The license plate matched the license plate previously

---

[1] Officer Rowe was a new officer working with the drug interdiction team and was riding along for training purposes. (Tr. at p. 10).

[2] No information has been provided to the Court about the subject matter of the February 2021 investigation or whether it involved the drug interdiction task force. Although it is speculation by the Court, it is possible this investigation involved Count 2 in the Indictment as the date for that count is early February 2021.

2

associated with Bastin; however, the vehicle was registered to someone else. Officer James, just south of the 334 mile marker, activated his emergency lights to conduct a traffic stop of the vehicle.

Sometime before initiating the stop, Officer James notified the rest of the drug interdiction team of the situation, including that Bastin had a history of resisting law enforcement. In response, other task force members positioned themselves north of Officer James' location. That turned out to be wise. Rather than stop, the vehicle slowed, exited the highway, and proceeded through the stoplight at I-69 and U.S. 6. Officer James then activated his siren. The driver made a northbound turn onto County Road 27 and accelerated in speed to upwards of 100 mph. By now, other officers had joined the pursuit and Officer James' vehicle had trouble keeping up with the high speed. Officer Mathew Haber (Officer Haber), driving a white Dodge Charger also equipped with an in-car camera, took the lead. (Tr. at 14, 38).

The pursuit continued northbound on County Road 27 until the vehicle reached County Road 6. Aside from excessive speed, the vehicle's driver was driving left of center and passing other vehicles in no passing zones. (Tr. at 14). At County Road 6, the vehicle lost control and went into a ditch. The driver tried to back out and keep driving but was blocked by Officer James who had, by now, caught up to the pursuit. (*Id.*). Officer James exited his vehicle, drew his firearm and began giving commands to the driver. Officer Haber and Corporal Miller arrived quickly and took up positions on the right side of Officer James' vehicle. Officer James observed "a lot of movement inside of the vehicle" but could not see what the driver was doing. (*Id.* at 15). Corporal Miller told the driver to stop reaching. (*Id.*).

Eventually, the driver, later affirmatively identified by Officer James as Bastin, put his hands up and exited the vehicle. Bastin then followed commands and walked backwards to Officer

3

James where he was placed under arrest. (Tr. at 16). All these events were captured on the in-car cameras in the police vehicles and were submitted by the Government as Exhibits 6 and 7.

Officer James and Corporal Miller cleared the vehicle for other occupants. Finding none, Officer James retrieved Reggie to conduct a "free air sniff" around the exterior of the vehicle. Officer James began at the front right of the vehicle and worked around to the passenger side. There, Reggie gave a final indication for the presence of narcotics, consistent with his training, by sitting. (Tr. at 16-18). Based on Reggie's alert, Officer James searched the vehicle and located a clear plastic bag with a white crystal-like substance believed to be methamphetamine on the center console. (*Id.* at 18-19). On the passenger floorboard, Officer James recovered a red Fire Keepers bag with a digital scale that contained a white, crystal residue. (*Id.* at 19). Also recovered was a smashed cell phone that Officer James speculates was the reason for the movement inside the vehicle after the vehicle crashed.

Officer James contacted a tow company to impound the vehicle. The Government offered the Auburn Police Department's Impound Procedures as Exhibit 3. Pursuant to this procedure, Officer James completed a tow form and took photos inside the vehicle, under the hood, and inside the glove compartment to inventory anything of value found inside the vehicle. (Tr. at 20-23).

## LEGAL ANALYSIS

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because a traffic stop constitutes a "seizure" under the Fourth Amendment, it is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). The court in *Whren* explained "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic

violation has occurred." *Id.*; *see also, United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020) (reasonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop). "The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop." *Id.*

Bastin contends that Officer James lacked reasonable suspicion or probable cause to initiate the traffic stop. He bases this argument on his belief that Officer James could not have known that Bastin was operating the vehicle when he decided to launch a traffic stop. Taking this argument one step further, Bastin argues that Officer James "wanted to initiate a criminal investigation for drugs and had no intent of issuing a citation for any perceived infractions." (ECF No. 31 at 4). In turn, the Government asserts that Bastin ignores all of Officers James' testimony about his familiarity with both Bastin and the vehicle he drives. That information, combined with his recognition of Bastin as he drove by him on the highway, was enough reasonable suspicion to justify an investigatory stop, the Government contends. As for the pretext argument, the Government points out that the reasonableness of a traffic stop under the Fourth Amendment must be decided using an objective standard, not the officer's actual purposes.

Just recently, the Seventh Circuit explored the law relating to pretextual stops and its effect on ordinary citizens. *United States v. Cole,* 21 F.4th 421 (7th Cir. 2021). After reiterating that the Supreme Court in *Whren* authorized an objective standard in analyzing the reasonableness of a traffic stop, the court noted that "*Whren* ... gave police officers wide latitude to stop vehicles for reasons having nothing to do with the traffic laws that provide lawful pretexts for the stops." *Cole,* 21 F.4th at 436. Even so, "[t]he combination of the objective test under *Whren*, the number and detail of traffic laws, and the discretion inherent in applying those laws gives police officers the power to stop nearly any vehicle if they watch it for more than a few minutes." *Id.* (citations

5

omitted). Relevant here, the court discussed an empirical study from North Carolina where traffic stops were used as a pretext to search for drugs. The study found "a small fraction of searches turn up any drugs, and the proportion finding dealer quantities of drugs is much lower still." *Id.* at 437. From this result, the court recognized "[t]hese police tactics subject large numbers of innocent drivers to this sort of harassment and humiliation for minimal gains in drug interdiction." *Id.*[3]

As interesting as the discussion in *Cole* is in the scholarly sense, practically speaking, the discussion relating to pretext does not aid Bastin's cause here. This is so because even if, as argued, Officer James' true goal as part of his drug interdiction duties was to stop Bastin to search for drugs, the law remains that his motives are irrelevant so long as the traffic stop is supported by reasonable suspicion that he committed or is committing a traffic violation. The Court finds it was.

Officer James credibly testified he was familiar with Bastin from a prior investigation. He had a photo of Bastin on his computer waiting for the vehicle to drive by him on I-69, and he had a photo of the vehicle and license plate of the vehicle known to be driven by Bastin. When the vehicle drove by, Officer James testified that he saw a male matching Bastin's description, even if just briefly. He had Officer Rowe check the license plate and it matched the vehicle Bastin was known to drive. Further, if Bastin was, in fact, driving the vehicle, Officer James knew he was doing so illegally. At the very least, this was reason to conduct a brief investigatory stop of the vehicle to affirmatively identify the driver.

Even if the Court agreed with Bastin, however, the events as they happened after Officer James activated his lights, provide a basis for the stop. Officer James witnessed countless traffic violations as Bastin led him on a high-speed chase on county roads. So even if there was no reasonable suspicion at first, it clearly developed, along with probable cause, shortly after. *Ornelas*

---

[3] The Seventh Circuit also discussed the disproportionate effect of pretextual stops on black and Hispanic groups.

*v. United States,* 517 U.S. 690, 695 (1996) (reasonable suspicion and probable cause are fluid concepts not capable of precise definition); *Illinois v. Wardlow*, 528 U.S. 119 (2000) (flight is an act of evasion that can constitute reasonable suspicion). The stop of the vehicle was proper under the Fourth Amendment.

Next, Bastin objects to the vehicle search. He argues that after the crash Bastin was in custody as he was removed from the vehicle, placed in handcuffs and inside a police vehicle. There was no threat to officers as he could not access the vehicle he had been driving. And, he argues, Officer James knew that the vehicle would be towed, the car was immobilized and there was plenty of time to procure a warrant.

"Warrantless searches are considered *per se* unreasonable under the Fourth Amendment unless one of a few specifically established and well-delineated exceptions applies." *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010) (citing *Arizona v. Gant,* 556 U.S. 332 (2009)). One such exception, a search incident to arrest, permits a warrantless vehicle search if "an arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *Arizona v. Gant*, 556 U.S. at 346 (emphasis added). Presumably Bastin relies on *Gant*[4] to support his first contention, that is, Bastin had no access to the vehicle at the time of the search and the search was unrelated to the reason for his arrest.

On this point, the Court agrees with Bastin. When Bastin was handcuffed away from the vehicle, the basis for arrest (as far as the Court can determine) was an outstanding warrant, driving with a lifetime suspension, and felony resisting by flight. So a search of the vehicle based solely on that offense would have only been justified if Bastin was somewhere near the vehicle or Officer

---

[4] Bastin cites only two cases in his briefs so the Court is left to speculate as to the source of the legal support for his arguments.

James believed the vehicle contained evidence of one of those offenses. Bastin is correct, then, that a search incident to arrest would not justify the extended search of the vehicle's interior that occurred. But if this is his argument, it is of little consequence because, as the Government points out, the automobile exception to the warrant requirement provides an independent basis for the search.

The Seventh Circuit has observed that "[t]he suspicion required for a vehicle search incident to arrest under *Gant* is keyed to the offense of arrest" while the automobile exception to the warrant requirement, which requires probable cause to believe that evidence of a crime might be found in the car, "is not tied to an arrest." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 1014). When there is probable cause to search a vehicle, law enforcement may search "all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments, containers, packages, and trunks." *Id.* (citing *United States v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008)); *United States v. Ross*, 456 U.S. 798, 823–24 (1982). When searching a vehicle, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Ross*, 456 U.S. at 823. "The probable cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *Id.* at 808.

A trained drug sniffing dog's positive alert on a vehicle provides probable cause to search a vehicle. *See United States v. Guidry*, 817 F.3d 997, 1005 (7th Cir. 2016). That is what happened here.[5] Once Reggie, a properly trained and certified K-9, positively alerted on the vehicle, Officer

---

[5] Bastin denies any argument that the free air sniff prolonged the stop. (ECF No. 31 at 3); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *Rodriguez v. United States,* 575 U.S. 348 (2015).

James had probable cause to search for contraband. The automobile exception applies to the vehicle search and the search was supported by probable cause.

## CONCLUSION

Based on the reasoning above, the Defendant's Motion to Dismiss, or in the alternative, Motion to Suppress (ECF No. 22) is DENIED.

So ORDERED on March 3, 2022.

                                            s/ *Holly A. Brady*
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT